UNITED STATES of America, Plaintiff,

v.

James Bernard STEWART, Defendant.

Crim A. No. 6–80912.

United States District Court,
E. D. Michigan, S. D.

Sept. 14, 1976.

Christopher A. Andreoff, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

John L. Thompson, Jr., Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on defendant's motion to dismiss the indictment. The issue raised is whether a two and one half year delay between the date the defendant was identified as an armed bank robber from a spread of photographs and his indictment for armed bank robbery has resulted in a violation of defendant's Fifth Amendment right to due process. For reasons discussed below, the court is of the opinion that the defendant's motion must be denied.

*Factual Background*

A June 23, 1976 indictment charged the defendant with armed bank robbery com-

mitted on or about August 8, 1973. In January of 1974, approximately five months after the date of the alleged robbery, defendant was identified by witnesses from a photographic spread. At the time of his identification and continuing until the present time, defendant has been incarcerated by the State of Michigan on unrelated charges. In September of 1974, about eight months after the defendant was identified, an FBI agent requested permission from defendant's attorney to conduct an interview with him. Permission was granted but the interview never took place. During this period of time, defendant was involved in other criminal prosecutions by the State of Michigan. Defendant was tried in late 1975 for first degree murder and acquitted on December 18, 1975. It was after this acquittal that the indictment in this case was returned.

Defendant claims that he can no longer recall his whereabouts on August 8, 1973, the date of the offense charged in the indictment, and that if he could remember that day he would present an alibi defense to the present charge. He claims that as a result he has been substantially prejudiced by the pre-indictment delay and further that the government intentionally delayed this indictment for the purpose of gaining a tactical advantage.

*Discussion of the Law*

[1] Under certain circumstances, an unreasonably long delay in bringing charges against a defendant, even though within the limitations period, may result in the denial of due process to the defendant. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In *Marion,* the Supreme Court noted:

". . . it is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this

case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. *Cf. Brady v. Maryland,* 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963); *Napue v. Illinois,* 360 U.S. 264, [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959). However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." [404 U.S. 324, 325, 92 S.Ct. 465] [footnotes omitted]

Following *Marion,* in *United States v. Giacalone,* 477 F.2d 1273 (1973), the Sixth Circuit wrote, ". . . we must accept the general rule that in the absence of a showing of *intentional* Government delay actual prejudice must be demonstrated in order to establish a violation of the Fifth Amendment. . . ." (1276). This language would seem to indicate that a showing of *either* intentional government delay *or* substantial prejudice would make out a claim of a denial of due process. However, the Court of Appeals in *United States v. Alred,* 513 F.2d 330 (6th Cir. 1975), characterized its *Giacalone* decision as a case in which it was recognized that ". . . given a sufficiently unexplained pre-indictment delay and sufficient prejudice stemming from such delay, a pre-indictment delay could violate due process. . . ." (332) This would indicate that *both* factors would have to be present to show a denial of due process. It is not necessary to resolve this ambiguity at the present time. In the case before the court, there has not been a sufficient showing of either substantial prejudice or unreasonable government delay.

■ The Supreme Court in *Marion, supra,* recognized that any delay could, to some extent, have an effect on the trial of a criminal case and that more than the usual effects of delay must be shown to make out a claim of denial of due process. The Court wrote "Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. . . ." 404 U.S. at 325, 326, 92 S.Ct. at 466. When a prosecution is brought within the statute of limitations period, there must be a clear showing that the chance for a fair trial has been prejudiced in a special way to make out a claim of denial of due process.

■ The prejudice in this case, if accepted as alleged by the defendant, would not be of the same magnitude as in the main cases cited by defendant in his brief in support of the motion. In *Woody v. United States,* 125 U.S.App.D.C. 192, 370 F.2d 214 (1964), the District of Columbia Court of Appeals was concerned because the undercover agent who had allegedly purchased narcotics from the defendant was relatively new at the job and had not made detailed notes of the transaction which had taken place four months earlier. In *Ross v. United States,* 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), besides the narcotics, the prosecution's case consisted solely of a policeman's testimony that he had purchased narcotics from the defendant. The policeman had to refresh his memory by looking at his notes from that day. In these cases, the court had serious doubts about the quality and the quantity of proof offered by the government. In the present case, however, the government intends to call, in addition to several witnesses who identified the defendant in a photographic spread, a purported accomplice to testify as to Stewart's involvement in the robbery.

■ On the issue of unreasonable or intentional government delay, this court is of the opinion that the better approach would be to shift the burden to the government to show that the delay was for some valid and important reason if defendant shows the requisite prejudice. The government is the party in the best position to show the reason for the delay. If it does not come forward with a good and valid explanation, the prejudiced defendant has sustained his claim of denial of due process. However, in this case the court finds that the government has sustained its burden of showing that the delay was for a valid and important purpose.

■ This is not a case where the government delayed bringing charges against the defendant in the hope of obtaining a tactical advantage. Nor is it a case where the government was negligent or irresponsible in failing to indict the defendant within a short time after the photo identification. The government has acknowledged that the indictment was intentionally delayed, but that the purpose of the delay was to see if the prosecution could be avoided. Defendant was involved, during this period, in a state prosecution for first degree murder. If defendant had been convicted he would have been subject to life imprisonment. The United States might not have prosecuted at all if defendant was incarcerated for life on state charges. Although there is a potential for abuse when the government delays in charging a defendant, in this case the decision not to charge the defendant with a federal offense until the state murder charge had been resolved was in no way improper. In a time of extremely overcrowded court dockets, the decision by the government to wait until it was sure that prosecution was necessary and important before using up valuable court time was in accord with the sound administration of justice. For courts to find that such actions on the part of the government denies due process to defendants would lead to a situation where the government would feel constrained always to charge a defendant immediately even though other pending proceedings might make the further prosecu-

tion of the defendant both harmful to the defendant and of no value to the public interest.

In this case, the delay by the government, although intentional was certainly not unreasonable. Accordingly, the defendant has not shown a violation of due process and the motion to dismiss the indictment must be denied.

So ordered.