466 F.Supp. 838 (1979)
UNITED STATES of America
v.
Vincent STANZIONE, Defendant.
No. 78 Cr. 559.
United States District Court, E. D. New York.
March 1, 1979.
*839 Edward R. Korman, U. S. Atty., Brooklyn, N. Y., by Wendy Brill, Special Atty., Dept. of Justice, Brooklyn, N. Y., for plaintiff.
*840 Frank A. Lopez, New York City, for defendant.

MEMORANDUM ORDER
NEAHER, District Judge.
Defendant moves, pursuant to Rule 12, F.R.Crim.P., for an order dismissing the indictment, on the grounds that its return more than three years after the commission of the most recent offense charged is inconsistent with the command of the fifth amendment's due process clause. Because defendant's claims do not indicate a departure from "settled principles of due process," United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 2053, 52 L.Ed.2d 752 (1977), the motion is denied.
The challenged indictment charges that in September 1974 (Count 1) and again in September 1975 (Count 2), the defendant used extortionate means to collect or to attempt to collect extensions of credit, in violation of 18 U.S.C. § 894. According to defense counsel, the complaining witnesses have been cooperating with federal agents at least since the time of the transaction set forth in the second count of the indictment (a transaction apparently evidenced by two contemporaneous consensual tape recordings), but the government took no action to present its case against the defendant to a grand jury until at least three years later and did not commence formal proceedings until October 5, 1978, when the indictment was filed. Lopez Aff. (11/10/78), ¶¶ 5-6. Although the indictment thus was returned well within the applicable five-year statute of limitations, see 18 U.S.C. § 3282, defendant argues that unless explained or justified, the 37-month delay in prosecution  measured, presumably, from the date of the tapes to the filing of the indictment  is per se violative of due process.[1]
Stanzione's unstated theory seems to be that the government might earlier have proceeded against him, but elected not to do so, and that as a result of the lengthy period of inaction he is now unable, as counsel avers, to recall "many of the events of the incidents involved and covered by the indictment," Lopez Aff., supra, ¶ 9, or to locate three prospective defense witnesses, id., ¶ 8. Counsel also notes that the two tape recordings have lain for three years in the government's possession without benefit of seal. Id., ¶ 7.[2]
It is, of course, settled that government prosecutors are not obliged to file criminal charges as soon as they have probable cause to believe that an offense has been committed or even when they have amassed evidence sufficient to sustain a conviction. Apart from the constraints imposed by the statute of limitations, the timing of a prosecution  much like the decision of whether to prosecute at all  generally lies entirely within the prosecutor's discretion. See United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 2049-52, 52 L.Ed.2d 752; United States v. Marion, 404 U.S. 307, 322-23, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Defendant relies, however, on the decision of the District of Columbia Circuit in Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), reversing a narcotics conviction where the swearing out of the complaint was deliberately postponed for seven months, to the prejudice of the defendant and, in the court's view, without adequate justification.
At the outset, we note that defendant's reliance on Ross is wholly misplaced. First, *841 the reversal in Ross was based on the court's purported supervisory powers, not on the command of the fifth amendment, 121 U.S.App.D.C. at 237, 349 F.2d at 214, and it has been so interpreted by both the Supreme Court and the Second Circuit. See United States v. Marion, supra, 404 U.S. at 315 n.8, 92 S.Ct. 455; United States v. Dooling, 406 F.2d 192, 197 (2d Cir.), cert. denied, sub nom. Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); United States ex rel. Morton v. Mancusi, 393 F.2d 482, 484 (2d Cir. 1968). Second, the principle of Ross has never been endorsed or adopted in this circuit, see Dooling and Mancusi, supra, and was noted but dismissed as anomalous by the Supreme Court in Marion, supra, which itself involved a 38-month delay from offense to indictment. Third, Ross and its District of Columbia progeny have long since been limited to prosecutions which "rely fundamentally upon an identification of a defendant as a result of a single brief contact by a Government witness who, in a relatively short period of time has participated in a substantial number of virtually identical transactions," where prejudice to the defendant has been shown. Tynan v. United States, 126 U.S.App.D.C. 206, 208, 376 F.2d 761, 763, cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967). See generally United States v. Jones, 173 U.S.App.D.C. 280, 285-92, 524 F.2d 834, 839-46 (1975).
More important, the Second Circuit has recently indicated an unwillingness to expand the reach of the due process clause beyond the carefully limited rule laid down in Lovasco and Marion, supra. See United States v. Tanu, at 89 (2d Cir. 1978); cf. United States v. Laurenti, 581 F.2d 37, 44 (2d Cir. 1978). It is that rule, therefore, which must govern our consideration of the instant motion.
As the Supreme Court observed in United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966), "the applicable statute of limitations ... is ... the primary guarantee against [the] bringing [of] overly stale [prosecutions]." In one sense, at least, such statutes, which "represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice," United States v. Marion, supra, 404 U.S. at 322, 92 S.Ct. at 464, also give rise to a presumption, albeit rebuttable, that the mere passage of time between the commission of an offense and the commencement of proceedings will not unduly impair the ability of the accused to conduct his defense. Yet, because a statute of limitations can serve only "to guard against possible as distinguished from actual prejudice," id. at 322, 92 S.Ct. at 464, the Supreme Court has recognized that the government's obligation, implicit in the concept of due process, to refrain from interfering with a criminal defendant's right to receive a fair trial, may require dismissal of an otherwise timely indictment if the delay in accusation has been impermissibly motivated and causes actual and substantial prejudice to his cause. Id. at 324-25, 92 S.Ct. 455.
Because the due process claims asserted in Marion were "speculative and premature," the Court had no occasion to define the precise contours of the constitutional safeguard against unreasonable pre-accusation delay, noting simply that "[t]o accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." 404 U.S. at 325, 92 S.Ct. at 465-466. Although the allusion to traditional due process considerations was clear, the Marion decision was interpreted by many lower federal courts as leaving open the question of whether a defendant could obtain dismissal as a remedy for delay-caused impairment of his defense without demonstrating governmental overreaching. See, e. g., United States v. Avalos, 541 F.2d 1100, 1107 n.9 (5th Cir. 1976), cert. denied, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); United States v. Vispi, 545 F.2d 328, 332 n.4 (2d Cir. 1976). United States v. Iannelli, 461 F.2d 483, 485 n.2 (2d Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 310, 34 L.Ed.2d 243 (1972).
*842 The answer came in United States v. Lovasco, supra, where the Court explained that "proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid," 97 S.Ct. 2048, for
"Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused."
Id. at 2049. The Court thus reconfirmed "that the Due Process Clause has a limited role to play in protecting against oppressive delay," id. at 2048, but one that does not grant judges leave to expand the due process concept beyond its established borders by substituting their own judgment for that of prosecutors:
"Our task is more [limited]. We are to determine only whether the actions complained of ... violate those `fundamental conceptions of justice which lie at the base of our civil and political institutions,' Mooney v. Holohan, 294 U.S. 103, 112 [55 S.Ct. 340, 342, 79 L.Ed. 791] (1935), and which define `the community's sense of fair play and decency,' Rochin v. California, 342 U.S. 165, 173 [72 S.Ct. 205, at 210, 96 L.Ed. 183] (1952)."
97 S.Ct. at 2049.
The Court again declined to articulate any more exact standard for evaluating claims of pre-accusation delay, although it did treat "tactical delay"  that is, "delay undertaken by the Government solely `to gain tactical advantage over the accused,'" 97 S.Ct. at 2051 (quoting from United States v. Marion, supra, 404 U.S. at 324, 92 S.Ct. 455)  as a benchmark for impermissible motivation.[3] The Court simply held that an indictment may not be dismissed solely because the accused's defense has been prejudiced by the postponement of action for 18 months while the government completes its investigation, leaving "to the lower courts ... the task of applying the settled principles of due process .. to the particular circumstances of individual cases." 97 S.Ct. at 2052-53.
The settled rule in this circuit allocates to the defendant the burden of demonstrating both (1) that his right to a fair trial has been substantially impaired and (2) that the delay was deliberate and calculated to produce such a result or was "otherwise than legitimate."[4]United States v. Lane, 561 F.2d 1075, 1077 (2d Cir. 1977); United States v. Mejias, 552 F.2d 435, 443 (2d Cir.), cert. denied, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977); United States v. Eucker, 532 F.2d 249, 255 (2d Cir. 1976), cert. denied, 429 U.S. 822, 1044, 97 S.Ct. 73, 50 L.Ed.2d 84 (1977). Defendant has plainly failed to offer facts which, if proved, would satisfy this test. First, the claim of prejudice  typically understood to mean the loss of essential evidence that would have been *843 available to the defense had the charges been brought more promptly, see United States v. Hillegas, 578 F.2d 453 (2d Cir. 1978)  is speculative, at best. Although defense counsel avers that three prospective witnesses are not now available to testify, there is nothing before the Court to indicate that they were available at some earlier time or that their testimony is necessary for  or even material or helpful to  Stanzione's defense. See, e. g., United States v. Pallan, 571 F.2d 497, 500-01 (9th Cir.), cert. denied, 98 S.Ct. 2249 (1978); United States v. Iannelli, supra, 461 F.2d at 485. The allegation that defendant can no longer recall certain nonenumerated events is equally insufficient. Lapse of memory, like loss of witnesses and evidence, is a possible consequence of any delay; but the due process clause requires dismissal only upon a showing of specific prejudice so grave that the defendant cannot receive a fair trial. See United States v. Marion, supra, 404 U.S. at 325-26, 92 S.Ct. 455. Hence, the federal courts have uniformly rejected similar undifferentiated claims of dimming memory. See id.; United States v. Titus, 576 F.2d 210 (9th Cir.), cert. denied, ___ U.S. ___, 99 S.Ct 180, 58 L.Ed.2d 169 (1978); United States v. Pallan, supra, 571 F.2d at 500-01; United States v. Medina-Arellano, 569 F.2d 349, 352-53 (5th Cir. 1978); United States v. Vispi, supra, 545 F.2d at 332; United States v. Avalos, supra, 541 F.2d at 1108; United States v. Finkelstein, 526 F.2d 517, 526 (2d Cir. 1975), cert. denied, sub nom. Scardino v. United States, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); United States v. Ferrara, 458 F.2d 868, 875 (2d Cir.), cert. denied, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972); cf. United States v. Revada, 574 F.2d 1047 (10th Cir. 1978) (semble). Nor do we understand how defendant has been prejudiced by the government's continued custody of the two tape recordings: in order to lay a foundation for their introduction at trial, the government must "produce clear and convincing evidence of authenticity and accuracy," United States v. Knohl, 379 F.2d 427, 440 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), and defendant is free to have the tapes examined by an expert for evidence of tampering, see United States v. Fuentes, 563 F.2d 527, 531-32 (2d Cir.), cert. denied, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977).[5] Finally, defendant does not attribute to improper motive the government's decision to wait until September or October 1978 to proceed against him, a defect fatal to his claim.
Although developments at trial may demonstrate otherwise, we cannot now conclude that the government, by permitting 37 months to pass before commencing proceedings against the defendant, contravened the command of the due process clause. Here, as in Marion, the claim of oppressive delay is, at least at the present time, speculative and premature. See 404 U.S. at 326, 92 S.Ct. 455.
Accordingly, defendant's motion is denied, without prejudice to renewal if warranted by events at trial.
SO ORDERED.
NOTES
[1] It is settled that neither this District's Transitional Speedy Trial Plan, adopted pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq., and Rule 50(b), F.R.Crim.P., nor the sixth amendment's speedy trial clause and its counterpart in the rules, Rule 48(b), F.R. Crim.P., apply to the period prior to arrest or formal accusation. See United States v. Tanu, 589 F.2d 82 at 87-89 (2d Cir. 1978). See generally United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 2048 n.8, 52 L.Ed.2d 752 (1977); United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States v. Mejias, 552 F.2d 435, 440-43 (2d Cir. 1977), cert. denied, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).
[2] Defendant's motion is supported solely by an attorney's affidavit. The government has filed an opposing memorandum only. Accordingly, defense counsel's averments have been accepted as true for purposes of this decision.
[3] This formulation derives from the government's concession in United States v. Marion, supra,

"that the Due Process Clause ... would require dismissal of the indictment if it were shown at trial that the preindictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324, 92 S.Ct. at 465 (footnote omitted).
Later in the same opinion, however, the Court, per Justice White, indicated that due process would forbid prosecution if the defense were actually prejudiced by a delay calculated to harass the defendant. In Lovasco, the Court reported that the government had expanded its concession, agreeing that due process would not countenance "`prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense.'" 97 S.Ct. at 2051-52 n.17 (citation to Government Brief omitted).
[4] The rule in fact antedates Lovasco, but certainly nothing in that decision or in the Second Circuit's recent decision in United States v. Tanu, supra, signals a departure from this allocation of the burden of proof. Indeed, it would seem that the two-step analysis required by Lovasco strongly supports its continuing validity. In any event, since defendant has not shown that his defense has been prejudiced by the lapse of time, we have no occasion to determine whether upon such a showing the government should be required to offer an explanation for the delay. Compare United States v. Stewart, 426 F.Supp. 58, 60 (E.D.Mich.1976).
[5] Moreover, as the government suggests, these recordings, if accurate and authentic, may greatly reduce the danger of misidentification and, arguably, have "preserved" one of the alleged transactions (albeit the more recent) "from the hazards of lapse of memory." Gov. Mem. 11/30/78), at 6.